Warner MUIR, Plaintiff,

v.

**UNITED AIR LINES, Inc., Defendant.**

Civ. A. No. 3-696.

United States District Court
S. D. Iowa,
Central Division.

Dec. 20, 1957.

Walter W. Selvy and Frank S. Fillmore, Des Moines, Iowa, for plaintiff.

R. J. Bannister, E. B. Carpenter, Paul Ahlers and James E. Cooney, Des Moines, Iowa, for defendant.

HICKLIN, District Judge.

On January 18, 1955, plaintiff, who is the pastor of a prominent Des Moines church, took passage on a regular flight of the United Air Lines, Inc., as a regularly paying passenger. After a short flight out of Des Moines, Iowa, the plane developed mechanical difficulties and made a forced landing in a corn field. As the result thereof, plaintiff suffered personal injuries which resulted in a law-suit for $90,000. At the pretrial conference it was determined that defendant would admit liability and try the case solely on the question of damages. The jury, on November 18, 1957, returned a verdict of $40,000 in favor of the plaintiff. On November 29, 1957, defendant has moved to set aside the verdict, and for a new trial, on the sole ground that the verdict is excessive.

This case was carefully tried over a period of four days. The time was devoted entirely to the issue on the question of damages. It was combined with a similar case on the part of a fellow passenger, which was also decided. Following the verdict in that case, to which a similar motion was made, a settlement has been agreed to.

Dr. Muir was fifty-six years of age. As the result of this injury, he suffered severe shock, including the fear that normally occurs to a person who is convinced that he is about to die. He suffered hospitalization soon after the crash, when it was discovered that he had a back injury, and he was fitted with a brace. He was treated at home, only to discover in a relatively short time that he was suffering from an internal hemorrhage. This came from an injury to his spine. The hemorrhage created an embolism in his intestinal tract and required an operation. This trouble was not diagnosed at first, and the patient endured a period of extreme discomfort for about thirty days, including vomiting and intravenous feeding. While the Doctor was injured in January, he resumed his pastoral duties as rapidly as he was able to do so, including the presentation of his regular Easter Sunday sermon. While continuing to suffer some discomfort and pain during the summer of 1955, he testified that by August 1st he felt able to, and did, resume his normal activity. By his own testimony and appearance, Dr. Muir exhibited himself to be a most straight-forward individual, inclined neither to dramatize nor overexaggerate any of the events which he endured.

His salary is $10,000 per year, plus the use of his parsonage, and he has a life

expectancy of 17.10 years. It does not appear that he will lose either on account of the injury. The special damages which he sustained, including all hospital and medical expense and loss of time (and also including an allowance for possible future medical expense), are generally agreed at $6,304. Referring to this possible future medical expense, it was shown by an expert that one of the permanent injuries sustained by Dr. Muir was a herniated disc. This doctor also advised further remedial surgery (which was covered by an estimated amount, and which was included in the $6,304 above referred to). It was pointed out that if this operation were to be undertaken, it would in all likelihood put an end to existing and future back pain and suffering and would moreover relieve Dr. Muir from the liability of possible future tragedy. (It was pointed out by the medical expert that a sudden, violent jar under present conditions could result in a further crippling handicap to Dr. Muir.)

Defendant Air Lines raises no question with reference to the amount of the special damages, but looks to the difference of $33,696 as being an excessive amount for this individual in relation to his pain and suffering (both past and future) and in the diminution of his earning capacity for the future.

The Court has carefully examined the briefs. Arrayed against each other are cases cited where, upon the one hand, large verdicts were held to be not excessive for one reason or another; and on the other hand, large verdicts have been held to be excessive. As was said in Frost v. Des Moines Still College of Osteopathy, Iowa, 1956, 79 N.W.2d 306, 315:

"Such verdicts we have said are not the satisfactory subject of comparison, for each case must be determined by the evidence introduced to justify the recovery claimed."

We are therefore of the view that nothing but confusion could result from an attempt to justify this verdict upon a comparative study.

Further than that, in the case of Chicago, Rock Island & Pacific Railroad Co. v. Williams, 8 Cir., 1957, 245 F.2d 397, our own Circuit Court of Appeals has ruled that this question of excessive verdicts is a matter that should be determined, if at all, by the trial court.

Now, as to the Muir case, while it may be accepted as established that he has suffered ten to fifteen percent permanent disabilities, yet the Court is of the opinion that it should take into consideration his record and his history, and that it would appear not only from the evidence but from his appearance, that neither his life expectancy, nor his capacity in his chosen field, nor his future earning ability, has suffered greatly by reason of his experience. This does not mean to say that he has not suffered discomfort, or that he will entirely cease to do so. We are talking only of dollar damages. However, his claim of "nocturia" was clearly shown to have existed for several years before the injury; his sleeping on a "hard board" is an economical way of describing an orthopaedic mattress. Generally speaking, the very vigor and activity of this pastor belie any such measure of damage as was awarded.

It is our final conclusion and view that the sum of $25,000 would have been an ample amount to allow him as a sum total for all of his so-called general damages. This account, added to the sum of $6,304 special damages, should have been placed as the outside limit of his award; that any further amount is excessive.

In conclusion, therefore, it is the determination of this Court; and

It is ordered that unless the plaintiff shall elect to remit the sum of $8,696 of this judgment, leaving judgment due him in the amount of $31,304 as the total of his damages (plus the judgment for costs), the verdict and judgment be set aside and a new trial granted.